UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES K. CEBALLOS, ) | Case No. CV 10-8391 JC |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION AND |
| v. ) | ORDER OF REMAND |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| Defendant. ) | |

## I. SUMMARY

On November 4, 2010, plaintiff James K. Ceballos ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; November 9, 2010 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 10, 2007, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 20, 119-21). Plaintiff asserted that he became disabled on January 20, 2005, due to a heart condition. (AR 140). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who appeared with a non-attorney representative) and a vocational expert on October 13, 2009. (AR 29-68).

On October 19, 2009, the ALJ determined that plaintiff was not disabled through June 30, 2008, the date plaintiff was last insured. (AR 20). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: syncope and ventricular tachycardia, dilated cardiomyopathy (alcohol related), status post internal cardiac defibrillator/pacemaker generator placement and subsequent change, hepatitis C, and history of tobacco and polysubstance abuse (AR 22); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 24); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 404.1567(b)) with certain additional limitations[1] (AR 24); (4) plaintiff could perform his past

---

[1] The ALJ determined that plaintiff: (i) could exert up to 20 pounds of force occasionally, up to 10 pounds of force frequently, and a negligible amount of force constantly to move objects; (ii) could stand and walk up to six hours in an eight-hour workday with normal breaks; (iii) could not climb ladders, ropes or scaffolds; (iv) could occasionally climb ramps or stairs, stoop, kneel, crouch or crawl; (v) could perform work that involves less than moderate exposure to environmental irritants, poorly ventilated areas, hazardous machinery, unprotected heights, or other high risk, hazardous or unsafe conditions; and (vi) could work in an environment that is mentally and physically low stress ("which is defined as work that does not require unusual, very fast paced or production rate requirements"). (AR 24).

relevant work as a trouble locator, test desk (AR 27-28); and (5) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 26).

The Appeals Council denied plaintiff's application for review. (AR 1-3).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///
///

1        (4)    Does the claimant possess the residual functional capacity to
2               perform his past relevant work? If so, the claimant is not
3               disabled. If not, proceed to step five.
4        (5)    Does the claimant's residual functional capacity, when
5               considered with his age, education, and work experience, allow
6               him to adjust to other work that exists in significant numbers in
7               the national economy? If so, the claimant is not disabled. If
8               not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed properly to consider the opinions of Dr. Ahn Duong, plaintiff's treating cardiologist. (Plaintiff's Motion at 12-13) (citing AR 360). As discussed in detail below, this Court agrees. As this Court cannot find that the ALJ's error was harmless, a remand is warranted.

### A. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[2] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

---

[2]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

1       The treating physician's opinion is not, however, necessarily conclusive as
2 to either a physical condition or the ultimate issue of disability. Magallanes v.
3 Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d
4 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not
5 contradicted by another doctor, it may be rejected only for clear and convincing
6 reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal
7 quotations omitted). The ALJ can reject the opinion of a treating physician in
8 favor of another conflicting medical opinion, if the ALJ makes findings setting
9 forth specific, legitimate reasons for doing so that are based on substantial
10 evidence in the record. Id. (citation and internal quotations omitted); Thomas v.
11 Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out
12 detailed and thorough summary of facts and conflicting clinical evidence, stating
13 his interpretation thereof, and making findings) (citations and quotations omitted);
14 Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to
15 reject a treating physician opinion – court may draw specific and legitimate
16 inferences from ALJ's opinion). "The ALJ must do more than offer his
17 conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must
18 set forth his own interpretations and explain why they, rather than the
19 [physician's], are correct." Id. "Broad and vague" reasons for rejecting the
20 treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599,
21 602 (9th Cir. 1989).

22     **B.**    **Pertinent Facts**
23       In a Cardiac Impairment Questionnaire dated December 5, 2008, Dr. Duong
24 opined that: (i) plaintiff could stand/walk for two hours and sit for eight hours in
25 an eight-hour work day; (ii) plaintiff could occasionally lift/carry only 10 pounds;
26 (iii) plaintiff could not push, pull, kneel, bend or stoop; (iv) plaintiff is likely to be
27 absent from work as a result of his impairments or related treatment about once a
28 month; (v) depression contributed to the severity of plaintiff's symptoms and

functional limitations; (vi) plaintiff's subjective symptoms would periodically interfere with his attention and concentration; (vii) plaintiff could tolerate only low stress work; and (viii) other limitations that would affect plaintiff's ability to work at a regular job on a sustained basis include:  psychological limitations, and plaintiff's need to avoid fumes, gasses, temperature extremes, humidity, dust, and heights (collectively "Dr. Duong's Opinions").  (AR 360).

Plaintiff's medical records reflect that beginning in December of 2007 plaintiff was prescribed Fluoxetine[3] "if needed for stress."  (AR 160; see, e.g., AR 230, 233, 244, 283, 303, 307, 312, 324, 326, 328, 329, 330, 335, 337, 340, 343, 344, 350, 352, 375, 393, 420, 450).

At the administrative hearing, plaintiff testified that as early as February 2008, he had experienced panic attacks and anxiety, in part due to the stress from his prior job.  (AR 51-52).  Plaintiff testified that, as a result, he would not be able to perform the duties of his past relevant work.  (AR 51-52).  In light of such testimony, the ALJ asked plaintiff what treatment he had received for panic attacks:

> Q. [Plaintiff], had you seen – with respect to the panic attacks, have you ever seen a therapist about that?
>
> A. No.  I did see – I did go talk to what they call at Kaiser addictive medicine, where I go see a doctor about my attacks, whatever.  Because, again, I couldn't explain why I got them, they put me in a group therapy where it handles anxiety attacks.
>
> Q. Okay.

---

[3]See Fluoxetine, Drug Information Online, available at http://www.drugs.com/fluoxetine.html ("Fluoxetine is a selective serotonin reuptake inhibitors (SSRI) antidepressant.  Fluoxetine affects chemicals in the brain that may become unbalanced and cause depression, panic, anxiety, or obsessive-compulsive symptoms.  [¶] Fluoxetine is used to treat major depressive disorder [and] . . . panic disorder. . . .").

1              A.     So it was for about 12 weeks long.  It was a person
2     telling us how to breathe, how to do certain things once you get these
3     attacks.
4              Q.     Okay.
5              A.     And that was basically the only things that –
6              Q.     Okay.  They didn't put you on any kind of special
7     medication?
8              A.     No.
9              ALJ:  Okay.  All right.  Thank you.
10    (AR 59-60).
11             Towards the end of the administrative hearing, plaintiff's representative
12    argued that, in light of plaintiff's residual functional capacity and testimony from
13    the vocational expert, sections 201.06 and 202.06 of the Medical-Vocational
14    Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the
15    Grids") required a finding of "disabled" in plaintiff's case.  (AR 65-66).  In
16    response, the ALJ acknowledged that plaintiff's was a close case, and that
17    plaintiff's ability to perform his past relevant work was, therefore, "the key issue"
18    to be resolved.  (AR 66).  Nonetheless, the ALJ declined plaintiff's
19    representative's request that plaintiff receive a psychological consultative
20    examination:
21             ALJ:  I don't see that – the extent of the information that we
22        have in the record warrants a psychological CE.  I don't think that'll
23        be cost-effective.  I'm just being honest on that.
24             REP:  Okay.  The record doesn't really have much development
25        on that.
26             ALJ:  I know.  And nor do we have any indication really that,
27        you know, even going through therapy that even a mild
28        antidepressant or anti-anxiety medicine was either recommended by a

>therapist or even [plaintiff's] primary care physician so – you know,
>even the primary care physician would say, you know, try some Paxil
>for a while or Wellbutrin or something. Okay. But we don't even
>have that.

(AR 66).

In his decision, the ALJ concluded that plaintiff did not have a severe mental impairment:

>[Plaintiff] testified that he has a mental impairment. He had
>anxiety and panic attacks in February 2008 and attended group
>therapy for 12 weeks; however, [plaintiff] also testified that he was
>not prescribed any medications to treat his panic attacks. [Plaintiff]
>further testified that he received no other psychiatric treatment and
>was never given any psychiatric medications. Additionally, the
>record contains no mental health treatment records to establish that
>[plaintiff] has a clinical diagnosis of anxiety or a panic disorder or
>that his anxiety/panic attacks have caused any significant functional
>limitations.

(AR 22-23).

### C. Analysis

Plaintiff contends that a reversal or remand is appropriate because the ALJ failed adequately to consider Dr. Duong's opinion that plaintiff had functional limitations due to depression. Defendant argues that a reversal or remand would not be appropriate essentially because (i) substantial evidence supports the ALJ's conclusion that plaintiff suffered from nothing more than a nonsevere anxiety disorder; (ii) the ALJ properly rejected Dr. Duong's Opinions "in [their] entirety" as based on plaintiff's subjective complaints and not supported by objective medical evidence; and (iii) the record before the ALJ lacked a sufficient basis for ordering a psychiatric consultative examination. (Defendant's Motion at 4-5).

1    This Court concludes that the ALJ erred in his assessment of Dr. Duong's
2 Opinions.  First, although the ALJ did expressly reject Dr. Duong's opinions
3 regarding plaintiff's *exertional* limitations (*i.e.*, "that [plaintiff was] capable of less
4 than sedentary work") (AR 25-26) (citing Exhibit 9F [AR 357-62]), the
5 administrative decision does not reflect that the ALJ addressed, much less
6 rejected, Dr. Duong's opinion that plaintiff had functional limitations related to
7 any *mental* impairment (*e.g.*, depression).  Nor does it appear that the ALJ
8 accounted for any such asserted mental limitations in plaintiff's residual functional
9 capacity assessment.
10    Second, although the ALJ determined that plaintiff's panic/anxiety attacks
11 were not severe, contrary to defendant's suggestion, it does not appear that the
12 ALJ's analysis at step two addressed whether plaintiff had a severe mental
13 impairment stemming from depression (*e.g.*, whether Dr. Duong found functional
14 limitations related to depression which caused more than a minimal limitation in
15 plaintiff's ability to perform basic mental work activities).  Even assuming, as
16 defendant suggests, that the ALJ included depression as one of plaintiff's non-
17 severe mental impairments, the ALJ's analysis and findings relative to the
18 severity/non-severity of such mental impairments is not supported by substantial
19 evidence because it is based on a flawed premise.  At the hearing the ALJ stated
20 that "[neither] a therapist or even [plaintiff's] primary care physician" had
21 recommended that plaintiff take "even a mild antidepressant or anti-anxiety
22 medicine."  (AR 66).  Nonetheless, as noted above, plaintiff's medical records
23 reflect that plaintiff was prescribed Fluoxetine, a medication used to treat major
24 depressive disorder and panic disorder (AR 160, 230, 233, 244, 283, 303, 307,
25 312, 324, 326, 328, 329, 330, 335, 337, 340, 343, 344, 350, 352, 375, 393, 420,
26 450).  In addition, in the decision the ALJ stated that plaintiff testified that he "was
27 *never* given *any* psychiatric medication."  (AR 22, 66) (emphasis added).  At the
28 hearing, however, plaintiff stated only that he was not given "*special* medication"

for his *anxiety attacks*. (AR 59-60) (emphasis added). Such inaccuracies in the ALJ's interpretation of the record cannot support the ALJ's step two findings. See, e.g., Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th Cir. 1999) ("inaccurate characterization" of record cannot serve as substantial evidence to support ALJ's disability findings); Lesko v. Shalala, 1995 WL 263995 *7 (E.D.N.Y. Jan. 5, 1995) ("inaccurate characterizations of the Plaintiff's medical record" found to constitute reversible error).

Although, as defendant suggests, the ALJ may ultimately reject Dr. Duong's opinion that plaintiff had functional limitations due to depression because such opinion was based solely on plaintiff's subjective complaints, see Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ properly rejected opinion of treating physician which was based in part on subjective complaints of claimant), the ALJ did not do so in the administrative decision. This Court is constrained to review the reasons cited by the ALJ. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."); Orn, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

Third, as noted below, the record suggests that additional limitations in plaintiff's mental abilities could have a material impact on the ALJ's decision. Therefore, to the extent the evidence regarding plaintiff's alleged depression was ambiguous, or the record was inadequate to allow for proper evaluation of any limitations related to depression, the ALJ should have developed the record on that issue. See Breen v. Callahan, 1998 WL 272998, at *3 (N.D. Cal. May 22, 1998) (noting that, in the Ninth Circuit, the ALJ's obligation to develop the record is triggered by "the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision") (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)).

Finally, the Court cannot find the ALJ's error harmless. At the hearing, the vocational expert suggested that if plaintiff, or a hypothetical person with plaintiff's characteristics, had additional limitations in mental functioning, such individual could not perform plaintiff's past relevant work. (AR 60-61). The vocational expert also testified that, based on plaintiff's testimony regarding how he actually performed his past relevant work, such hypothetical individual would not have skills which could transfer to any other position. (AR 61-62). The Court therefore cannot conclude that the vocational expert would have opined (or that the ALJ relying upon such opinion would have determined) that plaintiff could perform his past relevant job, or other work which exists in significant numbers in the national economy, if the ALJ had included in the hypothetical question posed to the vocational expert plaintiff's asserted additional mental limitations related to depression. Accordingly, the Court cannot find the ALJ's error to be harmless.

## V.   CONCLUSION[4]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 1, 2012

                                         /s/
                             Honorable Jacqueline Chooljian
                             UNITED STATES MAGISTRATE JUDGE

---

[4] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[5] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister, 888 F.2d at 603.